This is Waterkeepers Northern California v. AG Industrial Manufacturing Inc. Good morning. May it please the Court, Robert Perlmutter on behalf of Appellants Waterkeepers Northern California and Bill Jennings. The underlying appeal in this case presents a single narrow issue. Did Waterkeepers Notice Letter provide sufficient information to permit the defendant, AIM, to identify the dates of the Clean Water Act violations alleged in that notice letter? Violations, by the way, that AIM concedes were happening at that time. The district court held that the notice letter was inadequate, and the question wasn't even a close call. The district court was correct that this case doesn't present any close call, but it clearly erred in finding that the notice was inadequate. The alleged violations in this case fall into two broad categories. The daily violations, that's the failure to implement the pollution prevention plan, failure to conduct adequate monitoring and the like, and the discharge violations, the violations where pollutants actually discharge into the water. With respect to the daily violations, AIM concedes in its brief, and I quote, that unquestionably the notice letter accurately identified these violations and it concedes that they were ongoing at the time. Under this Court's holdings in both Southwest Marine and the Tosco case, the notice was thus adequate as to those daily violations. Both of those cases used notice letters with virtually identical language for precisely the same kinds of violations. Now, AIM contends on appeal, as it did below, that its subsequent efforts to come into compliance somehow rendered the notice letter defective and deprived the district court of subject matter jurisdiction. But this Court addressed that exact same issue in Southwest Marine. And the Court asked, what happens when a defendant is served with a proper notice letter and then afterwards, subsequent to the filing of the complaint, adopts a new pollution prevention plan and begins to take steps to come into compliance? Does that deprive the court of subject matter jurisdiction? That was the exact issue in that case. Your Honor, subsequent to the filing of the complaint. No, before the filing of the complaint. In Southwest Marine, four days before filing the complaint, they came up with a new notice letter and they began to implement it. It was four days beforehand. And the Court said, and I'm quoting from page 997, is the otherwise proper notice letter defective for failing to identify and discuss the new plan and its implementation? We think not. Why? Because subject matter jurisdiction is established by providing a notice letter that's adequate on the date that the notice letter is sent, not the date the complaint is filed. Accordingly, although the district court inexplicably failed to mention either Southwest Marine, which is right on point, or the daily violations, which are throughout the notice letter and the complaint, the notice letter was clearly adequate as to those violations. And the district court must be reversed on that grounds alone. With respect to the discharge violations, Waterkeeper alleged two distinct kinds of discharges. First, the notice letter alleged that AIM discharged stormwater on each day that it rained more than one-tenth of an inch at the facility. In identical fashion to the notice letter in Tosco, again a Ninth Circuit decision, the notice in this case then attached hundreds of dates on which rain allegedly fell at the area around the facility in the preceding five years. And the Court upheld that notice letter. So under Tosco, this notice letter was adequate as to those violations as well. The second category of discharges alleged by Waterkeepers concerned the so-called non-stormwater discharges. Those are the ones where discharge associated with AIM's washing down of its equipment at its facility. And again, AIM or, excuse me, Waterkeepers informed AIM of precisely what it was doing wrong, hosing down facilities in an uncovered manner so that that wash water then leaves the facility, and therefore AIM could take the steps to correct the problem. Is that the only stormwater violation that's alleged is from washing equipment or vehicles? No, Justice Kennedy. That's the only non-stormwater. That's what I meant, the only non-stormwater. The only non-stormwater is from washing down the equipment and the facility. Okay. And so there's no process water, some manufacturing process or what? There's no processing water that goes out at the end. I should correct that. There is, we have one visual observation of water coming out of a pipe that was unidentified and that was not associated directly with the manufacturing process, but it was water coming out of a pipe. In your complaint, you talk about process water, but you don't talk about it in your notice letter. I think that's, isn't that accurate? I don't think so. What we talked about in the notice letter was hosing down of the facility and of equipment. And that's non-stormwater discharge. In the complaint, you talk about process water? I don't believe so, Your Honor. We talk about the process, the industrial processes on site generate pollutants. And then when it rains on those processes, for instance, the machinery and the equipment and the uncovered oil drums and the rusting equipment, that's outside. That's part of the industrial facility. And then when it rains on that, that water goes off site. And that, under the terms of the Clean Water Act and the general permit, that's a stormwater discharge, not a non-stormwater. Okay. So there's no, this is not the kind of manufacturing process that uses water in the manufacturing process. Not to my knowledge, not this discharge. There's no end of the pipe that water comes out of. That's a separate kind of potential violation, but that's not at issue here. These non-stormwater discharges are directly analogous to the alleged windborne discharges at issue in the Tosco case, where this Court upheld a notice letter that simply said in its entirety as to those discharges, In this allegation, this Court said was sufficiently specific to inform Tosco what it was doing wrong so that it had an opportunity to correct the problem. And the Court said that's all that's required under the notice requirements. And the same is true here. If we were to agree with you that notice was given of substantially all of the violations, is this a case that we should encourage people to go to mediation on? That's a very good question, Judge Fletcher. There have been quite a few efforts at settlement, in my view. And I was not the trial counsel below, but I've reviewed the record and discussed that with trial counsel. I think at this point in the litigation, without the assistance of some sort of neutral evaluator who actually the parties are so far apart. Waterpapers believes that liability on literally thousands of violations is as close as you can get to slam dunk. And the defendants obviously believe otherwise. And I think without sort of some sort of neutral evaluator with the principles present, I don't see that going very far, unfortunately, at this point. But if the Court suggested, obviously, we would pursue that. At this point, I'd like to just briefly address the fee motion, unless the Court has any questions, and then reserve the balance of my time. Ames' appeal of the district court's denial of its fee motion should be rejected in our view as frivolous for three reasons. First, if this Court determines a notice is adequate, as we believe it clearly is, then Ames is no longer the prevailing party and isn't entitled to fees under any possible theory at all. Second, even if this Court holds that the notice is inadequate, then no court has jurisdiction to award fees. And that's the end of the story. Let me point to the language in the complaint that I was referring to. Thank you. It's on page 12 of the complaint, and I'll read it to you. Plaintiffs are informed, and this is non-stormwater section. Plaintiffs are informed and believe and thereupon allege that since at least October 1, 1992, defendants have been discharging unauthorized non-stormwater, which includes but is not limited to water used in industrial processes at the facility. That's the language. That's the language. Okay. And I believe what was intended by that word in processes was, again, not processes that end up with a pipe, water coming out of the pipe at the end of the day. But as part of their industrial activities and manufacturing, they hose down their equipment and their facility. And it's that process, so you're correct, Your Honor, largely that results in the discharges of non-stormwater. Thank you. I'll reserve the balance of my time. Good morning. I'm Dennis Hauser on behalf of the Appellee and Cross Appellant, Ag Industrial Manufacturing, Inc., and Claude Brown. On the attorney fee issue, I would like to reserve about four minutes for closing argument. And while this is a little bit out of the cart before the horse, dealing with the issue of attorneys' fees, as I was preparing for today's hearing, I became aware of a Sixth Circuit 1997 decision, which was subsequently followed by this Court, which held clearly that once an offending pleading has been ruled upon, you cannot bring a motion for sanctions under Rule 11. And to the extent that any portion of our briefs suggests that it would be proper or appropriate for this Court to remand for that type of consideration, I withdraw that argument. I would like to talk about the memorandum decision upon which dismissal of the plaintiff's complaint occurred. Before you do, let me just make clear. I think you had in mind that you were going to have a second argument when you said you were going to reserve it for later. As I understand it, they open and close on their appeal. I open and close on my appeal. And I'm only reserving four minutes for the attorney's fee issue as opposed to the other. I really don't think we need to go through all of that. You can make your argument here, because they've discussed the attorney's fees in their opening argument. Okay. So you can address it in yours here. Thank you. Dealing with the judgment of dismissal. The lower court characterized that dismissal as being, quote, "...disposed of on jurisdictional grounds." And that's certainly a correct statement as to at least one of the claims asserted in the plaintiff's complaint. And this is the one that you were directing your attention to, which is the third cause of action. The lower court correctly noted that the 60-day notice letter supplied absolutely no date information concerning when an alleged non-stormwater discharge occurred. The absence of at least one date when that discharge occurred renders the claim, the third cause of action, improper. The court did not have jurisdiction. The court properly entertained a Rule 12b motion and dismissed that claim for lack of subject matter jurisdiction. However, as to the remainder of the claims, it is our position, and it's indeed required under Rule 12c, that the judge weighed evidence as part of his evaluation of why he was doing what he was doing. And referring specifically to the memorandum in order, the excerpts at page 36, starting at line 13, he goes on for a good two pages through page 38, line 19, saying what he had found specific to the first cause of action. The allegation is that my clients previously had not filed a notice of intent. When the complaint was filed, indeed by the time period that the 60-day notice period covers had lapsed, my clients had filed such a notice of intent. We demonstrated to the court that that allegation was demonstrably false. And the judge, I believe, makes a summary judgment ruling on that specific issue. Well, he doesn't really. He talks along about his reasons, but he never does give a summary judgment ruling. But he is weighing evidence. Once you get into the process of the case. Well, you're not supposed to weigh evidence on summary judgment. As I recall Rule 12c, it states that when in considering a motion to strike, it is necessary to evaluate the evidence, it shall be treated as a motion under Rule 56. And it's our position that not only did he make this type of determination as to the first cause of action, but also as to the fourth and fifth causes of action dealing with whether or not within the 60-day period AIM had adopted a stormwater pollution prevention plan or a stormwater pollution monitoring plan. So you're saying, you're arguing that what he really did was take jurisdiction and then decide this as a matter of summary judgment. I didn't. Where did he take jurisdiction? As I understand the situation, for purposes of determining jurisdiction, you look at the four corners of the complaint. If the allegations are there, then the Court has jurisdiction to go further. The allegations are there in the first, second, fourth, and fifth causes of action. We attacked those allegations by showing that the allegations were false. We showed that there were – we established that AIM had filed a notice of intent, that AIM had adopted a stormwater pollution prevention plan. Those were undisputed facts that were set forth before the Court. Dealing with the adequacy of the notice in the totality where there is the suggestion that every time there's going to be stormwater discharge of at least one-tenth of an inch, that there's going to be a discharge into a protected waterway, we attacked that by showing that that position had been recanted by their expert witness, Mr. Bond. Indeed, the lower court specifically recites at footnote number three, referencing my declaration, which is a reference to Mr. Bond's deposition testimony, as well as his declaration. The Court ultimately holds as a matter of law, i.e., summary judgment, that the notice letter is defective. Once it makes that ruling, then it must dismiss because it no longer has subject matter jurisdiction. So it is correct to say that ultimately dismissal occurs at the lower court because of lack of subject matter jurisdiction, but you had to go through several stages to get there, and we believe that we have a preclusive judgment on the issue of whether this specific letter is legally adequate. Well, that's an interesting notion, but the letter might have been adequate certainly at the time that it was sent. What he did, talked about, was things that happened subsequently as to whether you brought yourself into full compliance with the law. Well. And there's certainly a dispute as to that, and certainly a dismissal wouldn't be appropriate and summary judgment wouldn't be appropriate. With due respect, I disagree. The letter. I see you do. The letter states that a violation occurs in the stormwater area each time that there is daily rainfall of at least one-tenth of one inch. They may have had a good faith belief when they made that statement in their letter, but when that position was disavowed by their expert witness, that is no longer then a basis for continued prosecution of an action if the notice letter did not For example, one of the things that I was thinking about is, you know, suppose that they had just simply said every time that you had two inches of rainfall, and two inches of rainfall is admittedly a fair amount of rainfall. So I went to the rain data that was as part of the notice letter, and I was surprised to find out that there was only three instances on the A2 schedule where there was water discharge or rainfall in excess of two inches. And I thought about that, and 10.75 inches in Lodi on one day is the functional equivalent of the biblical flood. That could not be the right number. So I went and cross-checked against the other schedule that they attached as part   One was December 20, 1996, 2.13 inches. For February 14, 1996, that data said no rainfall. For February 6, 1997, again, no rainfall. For December 20, 1996, only .01 inches of rainfall. And this is helping me decide why there's no subject matter jurisdiction. Okay. It seems I remember there was a witness who said, well, the storm water discharges would occur when there was not .1, but .19. And as I recall, the information they attached to their of these rain dates had many instances of .19. So as far as being an allegation that wasn't totally wiped out, there's still that allegation, right? I disagree. We are not required to speculate when rainfall occurred in such volume that it flowed to a protected waterway. We are entitled to identification of dates when that event occurred. And dealing with How do you square that with Tosco? Tosco, as I understand your opinion, you had a situation where there were, I think, 10 specific dates identified where a ship was tied up at the dock and presumptively loading and unloading operations were occurring. The Tosco opinion, as I understand it, said that that was sufficient since the defendant presumptively had to know when it was in fact loading and unloading those ships to be able to apprise them of what had transpired. My client does not maintain a rain gauge at its facility, and even if it did, it would not have been maintaining records of what rainfall was occurring when so that it could independently determine when .1 or more inches of rainfall in fact fell. So I think the critical distinction is, is that there was some date-specific information in that notice letter. It is true that hidden in the notice letter at the schedule that's attached to it at the top was reference to one-tenth of an inch, but I don't recall that being specifically discussed in your opinion. It was not my opinion. I'm sorry. There are two Judge Fletchers. I'm sorry. I can't correct you. But anyway, in talking to the Tosco opinion, that would be how I would distinguish it, is that there was date-specific information in there. And here we have a situation where Mr. Jennings apparently initially conducted his investigation on August 8, 1999, and they don't send out the notice letter until June of 2000. So you go through an entire wet season. He had the opportunity to independently go out there and verify when water was flowing off of that facility and through the Lodi City storm drain system and into the McKellemy River. He did not do that. We didn't know what was going to happen until we got hit with this lawsuit or this notice letter, and we can't protect ourselves by getting that same information as a possible defense to assertions of the plaintiffs. We're talking about fundamental notions of due process here. We are entitled to be told when we did something wrong so that we can proceed to evaluate the legitimacy of that claim and, if possible, prepare a defense. I don't think a reference in any letter, actually, a multiple reference, I think a test of an inch standard is mentioned at least two or three times in that letter, is sufficient where the plaintiff's expert disavows that testimony. And as I read Waltney ---- Well, all we're talking about is notice and what they said in the notice. Did they allege something? It doesn't matter whether it's correct or not. That's a different issue. And if they allege that on all dates, when it was a tenth of an inch or whatever it was, and that's wrong, it's still notice. Not within the meaning of the regulation which says that you have to supply the alleged violator with dates when the violation occurred. And then ---- They told you what dates there was more than a tenth of an inch in their schedule? That's the problem, Your Honor, is that the lower court made an evaluation of the adequacy of this information that was in ---- that was attached. And he noticed several inconsistencies in the two reports. And I just went down the two-inch program just to illustrate that there are a number of inconsistencies comparing one report with another report or, indeed, even comparing it with a third report being one which was filed as part of the summary judgment motion. Concerning the .19 inch suggestion, we did not have an opportunity to depose Mr. Bond on that issue. He made this disclosure after the discovery cutoff occurred, in the process and in the specific context of the plaintiff's motion for summary judgment. We would dispute that .19 inch is sufficient, but that's obviously a different dispute than the one that's currently before you. The dispute that's currently before you is that where you have a notice letter which is quite specific and says that each and every time in excess of one-tenth of daily rainfall occurs, there is a violation. And demonstrably, that is not correct. And where demonstrably the weather data that they supply to us is incorrect, judgment of dismissal was appropriate. They would have been better, quite frankly, I think, if they had simply just said one-tenth of an inch. But when they submitted inaccurate, misleading, confusing rain data, it was worse notice. Are you waiting for your answer? No, you looked like you were thinking of a question. I'm thinking, I do that every once in a while. We try to encourage that. Okay, thank you. So getting back to it, as I understand Gwaltney, Justice Marshall said that the way to attack a 60-day notice letter is to file a summary judgment motion to show that it is false. That is what we did. We demonstrated that the notice letter did not have the substantial credentials that are required to constitute adequate notice to my clients of when the dates of violation occurred. What the lower court is also saying is that upon an evaluation of the data that you've submitted to me, that data is so unreliable that you cannot proceed at this point in time. So he dismisses the case for lack of summary – excuse me, for lack of subject matter jurisdiction, but ultimately this is also a ruling on summary judgment that this notice letter is inadequate. Now, I would like to, I guess, briefly discuss then the attorneys' fee issue. I said before that the one-tenth of one inch might have been something that the plaintiffs legitimately believed when they sent out the notice letter. And until I was referring for this hearing, I would have agreed with that. But I want to direct the Court's attention to an element of the Sunlight Savage case, an unpublished decision that they are relying upon for certain issues that I dispute. But the – What court does that come out of? It comes out of the district court. It's Judge Keller. And in any event, what the last sentence of the next to the last paragraph of that opinion contains something that I completely missed before. Summarized, Judge Keller refused to grant plaintiffs' motion for summary judgment on the issue that a violation of receiving water limitations must occur each time that one-tenth of an inch of daily rainfall occurs. That decision was signed in mid-December of 1999. And so I would say that the plaintiffs have knowledge that at least one judge found this suggestion that a discharge violation occurs when there's one-tenth of an inch of daily rainfall to be seriously suspect. So again, getting back to Gwaltney, which provides the link here, it says that where allegations are made, and I believe that the – Different facility? Pardon? You're talking about some judgment from a different facility? No. I'm talking about the Sunlight Savage case that was – it's part of their appendix to one of their briefs. It involves an entirely different facility. Thank you. Yes, ma'am. The answer was yes. Yes. But, no, this is the only lawsuit that AIM has been involved in concerning this particular issue of whether or not it has violated the general permit. But anyway, getting back to the issue of attorney's fees, I would suggest that the continued prosecution, once they knew that one judge was not buying off on this one-tenth of one-inch concept, and their own expert witness had recanted on that issue, the continued prosecution becomes frivolous. To suggest that in your complaint, my client had not filed a notice of intent when they knew that to be the case. To suggest that we had not adopted a stormwater pollution prevention plan when they knew that to be the case and, in fact, had a copy of it in their possession, those allegations are frivolous, and they are of such a nature that they do justify an award of attorney's fees. But he files a notice of intent to sue. What is this notice of intent that you're filing? Notice of intent, excuse me, is a term of art within this industry. Under the general permit issued by the State of California for light industrial manufacturing companies like my client, there is what's known as a general permit. You are required to, in order to be able to legally discharge stormwater, to file what's called a notice of intent with the State of California. That's the first step. It's not the last step, by any means. But it's a notice of intent to seek a general permit? Or notice of intent? It's a notice of intent that you will be operating under the general permit for discharge purposes. This is, this basically tells the State of California, here I am, I'm one of the people that are going to be subject to your general permit. Okay. Your client, I guess, didn't even know of the existence of the law for eight years. Is that right? That's correct. And so he clearly acknowledges that he was in violation of the law. No. That's a loaded question that would require a five-minute answer to explain why no, but I'm willing to do that. Well, after he got the letter, he then filed a notice of intent. That's correct. And so prior to that, he obviously was in violation of the law. No. You know, the city of Lodi storm drain system, it, my client's facility is located south of the McKellemy River, about a mile downhill. That's significant because water does not typically flow uphill. It flows downhill. When Highway 99 was constructed in the 1950s, the principal impetus of the city was merely to move stormwater discharge on a grade down towards the delta. So the initial storm drain system basically channeled all stormwater under Highway 99, where it would then proceed in a westerly direction until it went into the delta. As development of Lodi occurred over several years, there have been many refinements to the city's storm drain system. One of those refinements was the installation of what we call the South Road lift station, as well as a detention pond, which we call Pixley Park. And what you have is the city's storm drain system empties into an open ditch that runs for about a mile, where it comes to the gate where you can channel the flow of water underneath Highway 99. Originally, the city had a gate that they could open or shut. And if they shut it, they would divert water back into Pixley Park. That is a detention pond. Water can sit there, evaporate, percolate into the ground, and never reach the McKellamy. Once the water gets to a certain level, though, there's another drain that kicks water back out underneath Vine Street and eventually directs it to the Clough Road lift station, where it is then lifted into the McKellamy River. In 2000, as a pure coincidence, there was a major construction project on Beckman Road. In front of my client and extending on down to Kettleman Lane, which is Highway 12. The effect of that project, in part, was to remove the gate and to install a permanent block wall at the end of the ditch. But the block wall has a couple of blocks out at the bottom so that some water can escape through and continue to go underneath Highway 99. We would concede that with the installation of that block wall, it is more likely than not that on certain occasions, yeah, water discharge from my client is in fact reaching the McKellamy. But until that block wall went in, it would be our position that, no, our water discharge did not go to the McKellamy. And it's important because the McKellamy River is the northern boundary of the city of Lodi and from Comanche Dam on down to where it intersects with I-5, it is classified as an impaired waterway. In contrast, the Delta is not. Because it is classified as an impaired waterway, there are certain additional restrictions that apply to water discharge into the McKellamy. And so it is an important distinction to us, and I appreciate you giving me the opportunity to explain why I said no to your answer. We dispute that in advance of receipt of the notice letter, that we in fact were discharging into the McKellamy in violation of the Clean Water Act. Thank you. Thank you. I'll be brief. I just wanted to make a few points. The first is with respect to the .1 inches of rain data, that figure comes from a formal rulemaking in which the administrator of the U.S. EPA found, after an extensive comment period, that one-tenth of an inch is sufficient overall to have a sample that will indicate whether or not an industrial facility is meeting the stormwater requirements. Water Keepers maintains, it's in the record below, it's in our summary judgment motion, that on every single day on which one-tenth of an inch or more of rain fell, we will ultimately be able to prove that stormwater discharged from their facility in violation of the Clean Water Act. What our expert, Stephen Bond, said, and there was deposition testimony on this submitted by counsel, is that he can guarantee, for purposes of summary judgment motion, summary judgment, he said it in his expert report and he said it in the declaration, that when .19 inches of rain fell on four different locations surrounding this facility, he and his expert judgment, after 12 years working for a state agency whose job it is to figure this out, he can guarantee that on each of those dates there will be a stormwater violation. We have never for a moment, and no court in this country that I'm aware of has found, that one-tenth of an inch is a frivolous or inadequate standard for notice. One-tenth of an inch is the standard used in hundreds of notice letters. It was used in the notice letter at issue in the Tosco case. If you look at the district court opinion that was submitted by counsel in both appeals, it's attached there. It uses the same exact manner that we use in this case. This court, the other Judge Fletcher's opinion, and I know because I argued the case, held that that was adequate as to every single violation alleged in that notice letter, the key word being alleged because that's what Gwaltney and Southwest Marine and every other appellate court decision to have considered this says that's all that's required is an allegation. With respect to Judge Reinhart, I did want to address a little more specifically your question about what Southwest Marine held as to what happens, is it the day before or after the complaint that the new pollution prevention plan was submitted in that case. I look back at pages 992 and 93 of the decision. The complaint was filed on August 27, 1996. The new stormwater pollution prevention plan was submitted on August 23, four days earlier. The district court expressly found that that plan was adequate. The plan was adequate, no question about it. It was their implementation of the plan that was inadequate, and for that reason they were hit with $800,000 in penalties because their implementation of the plan was inadequate. And so to where in this case we don't dispute that before the complaint was filed, they submitted an NOI, the notice of intent. We don't dispute that they developed a pollution prevention plan. We submit that the pollution prevention plan was inadequate on its face and it was not adequately implemented. And those are all ongoing violations. Can I ask a question about the rain information you submitted with your notice of intent to sue? I guess that's the right term. The one was rain information from Stockton? Right, about 15 miles away. And then the other one was rain information from some other? It was the Bear Creek Visitor Center, about the same distance away. Okay. In which direction? I do not know the answer to that, Your Honor. I certainly supplied that information. And just to be clear, I'll be perfectly clear about this. The notice, the rain data that our expert relied on subsequently for summary judgment motion, he used four new stations that he thought were, you know, in his opinion, more adequate for addressing what those dates are. Whether they're more accurate or less accurate is irrelevant for notice purposes under Gwaltney. Finally, as to Judge Fletcher, your question about whether or not they admit they were violating the Act, they admit that in every single one of their briefs and in their Statement of Undisputed Facts. The story about in 2000, coincidentally, the stormwater system was changed so that now they were discharging, to put it terribly, is a complete fabrication, and I think the papers on summary judgment below establish that. But even if we're not, and even if they were correct, it's still, that's a question to be cited on summary judgment motion. But as this Court well knows, a dismissal for lack of subject matter jurisdiction is not a ruling on summary judgment. And the Uter decision authored by Judge Reinhart that we cite in our papers says that. You can't rule on summary judgment motion if you have no subject matter jurisdiction. Unless the Court has any other questions, I have nothing further to add. Thank you, counsel. Thank you both very much. The case discharging will be submitted. The Court will stand in recess to the day. This Court, the session stands adjourned.
judges: B. Fletcher, Reinhardt, Restani